U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2022 MAY 24  PM 1: 47

CLERK

BY _____
DEPUTY CLERK

KEZIAH THAYER,                                    )
                                                 )
        Plaintiff,                               )
                                                 )
    v.                                           )        Case No. 5:19-cv-223
                                                 )
LAURA KNOWLES, Supervisor Vermont                )
Department for Children and Families             )
("DCF"); KAREN SHEA, Former Deputy               )
Commissioner for the DCF Family Services         )
Division ("FSD"); MONICA BROWN,                  )
DCF Case Worker; CHRISTOPHER                     )
CONWAY, DCF Case Worker; JENNIFER                )
BURKEY, DCF District Director, each in           )
their individual capacities; KENNETH             )
SCHATZ, Commissioner, DCF, in his                )
individual and official capacities; JOHN W.      )
DONNELLY, individually; and JOHN W.              )
DONNELLY, Ph.D., PLLC; LUND                      )
FAMILY CENER, INC.; CHRISTINE                    )
JOHNSON, Deputy Commissioner of DCF,             )
for the FSD; the VERMONT                         )
DEPARTMENT OF CHILDREN AND                       )
FAMILIES; JUSTICES OF THE                        )
VERMONT SUPREME COURT; and                       )
VERMONT CHIEF SUPERIOR JUDGE,                    )
in their official capacities,                    )
                                                 )
        Defendants.                              )

**ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION AND ON
DCF DEFENDANTS' PARTIAL CROSS-MOTION FOR RECONSIDERATION
(Docs. 138, 163)**

        In her First Amended Complaint, Plaintiff Keziah Thayer—a pseudonym used to protect

her privacy—sued the above-captioned defendants,[1] including the Vermont Department of

_____

        [1] The First Amended Complaint also named ten "Doe" defendants, but the Second
Amended Complaint eliminated those defendants. (*See* Doc. 137 at 3 n.3.)

Children and Families ("DCF"), asserting eight causes of action, among which are claims under 42 U.S.C. § 1983. (*See* Doc. 25.) Plaintiff asserts that she "has had her children taken from her unlawfully and removed from her life by a series of unfair and unjust steps, that in totality comprise an unlawful, unconstitutional, and profoundly wrongful outcome." (*Id.* ¶ 1.) She alleges that "[a]fter an initial, improper taking of her children, she has been withered step by step by a series of patterned practices to the destruction of her family." (*Id.*)

In its December 14, 2021 Opinion and Order, the court granted separate motions to dismiss filed by the Justices of the Vermont Supreme Court and the Vermont Chief Superior Judge (the "Judicial Defendants") and by DCF, DCF Commissioner Kenneth Schatz, DCF Deputy Commissioner Christine Johnson, and DCF officials Laura Knowles, Karen Shea, Monica Brown, Christopher Conway, and Jennifer Burkey (collectively, the "DCF Defendants"). (*See* Doc. 137.) The court concluded that Ms. Thayer lacks Article III standing to pursue her claims against the Judicial Defendants and that even if she had standing, the *Rooker-Feldman* doctrine bars those claims. (*Id.* at 72.) The court also concluded that the *Rooker-Feldman* doctrine bars all of the First Amended Complaint's claims against the DCF Defendants. (*Id.*)

The court also ruled on two motions to amend the complaint, granting leave to file a Second Amended Complaint in part and denying leave to file a Third Amended Complaint. (*Id.* at 72–73.) The court summarized the remaining causes of action as:

- Ms. Thayer's claims against Lund Family Center, Inc. ("Lund") and against John W. Donnelly and John W. Donnelly, Ph.D., PLLC (the "Donnelly Defendants") in Counts VI and VII of the Second Amended Complaint; and

- Ms. Thayer's parents' claims in Counts IV–V, VIII–IX, and XI of the Second Amended Complaint, "except that those counts are dismissed insofar as they seek damages against DCF, Schatz, and Johnson in their official capacities."

(*Id.* at 73.)

Two motions are currently pending. First, Plaintiff has filed a "Motion for Reconsideration with Request for Leave to Amend." (Doc. 138.) Second, in connection with their opposition to Plaintiff's motion (Doc. 150), the DCF Defendants have filed a Partial Cross-Motion for Reconsideration. (Doc. 163.) Familiarity with the December 14, 2021 Opinion and Order is presumed.

## I.    Reconsideration Standard; Timeliness of Cross-Motion

Although Plaintiff brings her reconsideration motion under Fed. R. Civ. P. 59(e), that rule is available only for alteration or amendment of a "judgment." The court's December 14, 2021 Opinion and Order did not resolve all aspects of the case and is not yet appealable; it is not a judgment but is instead an interlocutory order. *See* Fed. R. Civ. P. 54(a) (definition of "judgment"). The court therefore construes Plaintiff's motion to be under Rule 54(b), which states that "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

This procedural distinction makes no difference with respect to Plaintiff's reconsideration motion because the standard is the same. The court considers whether there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Lareau v. Nw. Med. Ctr.*, No. 2:17-cv-81, 2019 WL 4963057, at *2 (D. Vt. Oct. 8, 2019) (reconsideration standard under Rule 54(b)) (quoting *Off. Comm. of*

3

*Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)); *see also Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (same standard under Rule 59(e)).  This is a "strict" standard; "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

The distinction between Rules 54(b) and 59(e) raises a timeliness issue with the DCF Defendants' partial cross-motion for reconsideration, filed on January 25, 2022.  Since the DCF Defendants' motion must also be a Rule 54(b) motion, then the 14-day deadline in Local Rule 7(c) applies.  *See* L.R. 7(c) ("A motion to reconsider a court order, other than one governed by Fed. R. Civ. P. 59 or 60, must be filed within 14 days from the date of the order.").  Plaintiff contends that the DCF Defendants' motion is untimely.  (Doc. 153 at 6.)  The DCF Defendants concede that they filed their motion more than 14 days after the court's December 14, 2021 Opinion and Order but they assert that strict compliance with that time limit would be unjust in this case.  (Doc. 156 at 3.)

"Although the Court generally requires full compliance with its Local Rules, the Court may also excuse non-compliance where 'strict application of the local rules would lead to an unjust result.'" *Hoehl Fam. Found. v. Roberts*, No. 5:19-cv-229, 2021 WL 3677837, at *2 (D. Vt. May 27, 2021) (quoting *Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 431 (D. Vt. 2009)).  Here, there is no need to excuse compliance because the parties have already stipulated—and the court has ordered—that the 14-day deadline be extended.  Before Plaintiff filed her reply arguing that the cross-motion is untimely, Plaintiff stipulated to an extension of deadlines, including an extension to the January 25, 2022 deadline to file a motion for reconsideration.  (Doc. 139.)  The court granted the stipulated extension of time.  (Doc. 140.)

4

The court concludes that the DCF Defendants' partial cross-motion for reconsideration is timely and applies the standard recited above to both reconsideration motions.

## II.   Plaintiff's Reconsideration Motion and Request for Leave to Amend (Doc. 138)

### A.   Reconsideration

Plaintiff seeks reconsideration of the December 14, 2021 Opinion and Order for three reasons. She asserts that the court may have overlooked precedent indicating that: (1) her claims must each be independently evaluated under *Rooker-Feldman*; (2) *Rooker-Feldman* does not apply because her claims do not assert injuries caused by the Family Court judgment; and (3) the "fraud exception" to *Rooker-Feldman* applies. (*See* Doc. 138-1 at 2.)

The Judicial Defendants and the DCF Defendants have filed oppositions to Plaintiff's request for reconsideration. (Docs. 141, 150.)[2] Plaintiff does not seek reconsideration as to the Judicial Defendants. (Doc. 153 at 13.) The court therefore focuses here on the issues raised in Plaintiff's reconsideration motion and in the DCF Defendants' opposition.

### 1.   Independent Evaluation of Claims

As the court previously noted, one essential element for *Rooker-Feldman* to apply is that the Plaintiff must be complaining of injuries caused by a state-court judgment. (Doc. 137 at 21.) The court recited Ms. Thayer's various legal theories in support of her claims against the DCF Defendants. (*See id.* at 5.) The court also noted the Supreme Court's statement in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005), that "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines

---

[2] The remaining defendants have filed oppositions to Plaintiff's request for leave to amend. (Docs. 142, 143, 144.) The court considers the amendment issue below.

whether the defendant prevails under principles of preclusion." (*Id.* at 36 (cleaned up).)

Ultimately, the court found that none of Ms. Thayer's claims are "independent of her direct

attack on the judgment of the Family Division." (*Id.* at 37.)

Also in its December 14, 2021 Opinion and Order, the court noted that some courts have

held that the *Rooker-Feldman* analysis must be performed "claim-by-claim." *See, e.g., Behr v.*

*Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021) ("The question isn't whether the whole complaint

seems to challenge a previous state court judgment, but whether resolution of each individual

claim requires review and rejection of a state court judgment.").[3] The *Behr* court stated that this

"targeted" claim-by-claim approach is necessary because *Rooker-Feldman* is a narrow and

limited doctrine. *See Behr*, 8 F.4th at 1212–13 (asserting that *Rooker-Feldman* "will almost

never apply").

But this court found that, even after *Exxon Mobil*, "the weight of authority within the

Second Circuit indicates that [the] *Rooker-Feldman* doctrine is not quite that narrow." (Doc. 137

at 30.)[4] The court recognized that it was required to "scrutinize the injury of which a plaintiff

complains as a necessary step toward determining whether the suit impermissibly seeks review

---

[3] In her motion for reconsideration, Plaintiff cites other cases for the same proposition.
*See, e.g., Gifford v. United N. Mortg. Brokers, Ltd.*, No. 18 Civ. 6324 (PAE)(HBP), 2019 WL
2912489, at *6 (S.D.N.Y. July 8, 2019) (denying motion for leave to amend because *Rooker-
Feldman* barred multiple proposed counts; conducting an "individual analysis" of each proposed
claim "to determine whether plaintiff alleges injuries caused by the state court judgment and
whether adjudication of plaintiff's claims would invite a review and rejection of that judgment");
*Wenegieme v. U.S. Bank Nat'l Ass'n*, No. 16 Civ. 6548 (ER), 2017 WL 1857254, at *7
(S.D.N.Y. May 4, 2017) ("The Court must therefore consider whether each specific claim is
substantively barred by the *Rooker-Feldman* doctrine.").

[4] Other courts have similarly declined to adopt so narrow an interpretation of *Rooker-
Feldman*. *See Trapp v. Missouri*, No. 2:21-cv-04006-MDH, 2021 WL 5406843, at *7
(W.D. Mo. Nov. 18, 2021) (rejecting contention that the Eighth Circuit follows *Behr's*
interpretation of *Rooker-Feldman*; granting motion to dismiss counts seeking declaratory relief
and damages as barred by *Rooker-Feldman*), *appeal filed*, No. 21-3726 (8th Cir. Nov. 30, 2021).

and rejection of a state court judgment." *Charles v. Levitt*, 716 F. App'x 18, 21 (2d Cir. 2017) (summary order). And the court concluded that "[i]n light of the alleged injuries and the relief requested, . . . as against the DCF Defendants, the First Amended Complaint is, as a whole, a complaint directed at alleged injuries caused by state-court judgments." (Doc. 137 at 32.)

Plaintiff argues that the court improperly considered the First Amended Complaint "as a whole" and that independent review of each claim is "necessary to determine whether certain claims may be outside the scope of *Rooker-Feldman* because they were never addressed in the underlying proceeding." (Doc. 138-1 at 10.) The DCF Defendants maintain that the court did not "impermissibly group[] Ms. Thayer's proposed claims" and that it "rightly found that each of those claims, while nominally based on a different legal theory, complains of an injury caused by a state court order." (Doc. 150 at 3.) In reply, Plaintiff notes that she does not seek reconsideration of the dismissal of her claim for declaratory or injunctive relief—Count VIII in the First Amended Complaint—and that her remaining claims for damages must be addressed independently under *Gifford*, 2019 WL 2912489. (*See* Doc. 153 at 4–5 & n.1.)

Plaintiff's decision not to seek reconsideration of the dismissal of Count VIII creates a further wrinkle in this case. Without Count VIII, the First Amended Complaint is a significantly different pleading. The court concludes, however, that even without Count VIII, there is no basis to reconsider the applicability of *Rooker-Feldman* to Ms. Thayer's remaining counts against the DCF Defendants.

The court acknowledges that in some cases it might be necessary to perform an "individual analysis" of each claim to determine if *Rooker-Feldman*'s "substantive" requirements are met. *Gifford*, 2019 WL 2912489, at *6. A suit might include some claims that *Rooker-Feldman* bars because the claims ask a federal district court to review a state-court

decision, and simultaneously might include some other "independent" claims that *Rooker-Feldman* does not prohibit. "How do we determine whether a federal suit raises an independent, non-barred claim?" *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 86 (2d Cir. 2005). The Second Circuit has instructed that courts must focus on whether the federal plaintiff "*complain[s] of an injury* caused by a state judgment." *Id.* at 87.

Here, each of Ms. Thayer's remaining counts in the First Amended Complaint against the DCF Defendants (Counts I–V of that pleading) complains of the following alleged injuries:

> [L]oss of custody of her children for almost four years and the indefinite future; the physical, emotional, and psychological damage resulting from the loss of custody of, and separation from, Plaintiff's children; litigation expenses, including attorneys' fees and costs; loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress; and other compensatory damages, in an amount to be determined at trial.

(Doc. 25 ¶¶ 195, 213, 237, 245, 257.)  As the court previously observed, the Family Division's March 2019 Final Order terminating Ms. Thayer's parental rights is the single most tangible official action reflecting the destruction of her family that Ms. Thayer alleges.  (Doc. 137 at 30.) Ms. Thayer alleges some events that occurred before the March 2019 Final Order, but all of her injuries alleged in Counts I–V were caused by state-court orders.  (*Id.* at 31.)  Interlocutory orders issued by the Family Division before the March 2019 Final Order qualify as "judgments" for *Rooker-Feldman* purposes.  *See Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (suggesting that *Rooker-Feldman* would likely bar review of a family court's temporary removal order if that court had also entered a final order of disposition permanently removing the child from the plaintiff's custody).

Ms. Thayer's arguments to the contrary are unpersuasive.  In Counts I and II, Ms. Thayer alleges that DCF officials violated her due process rights at times prior to the Family Division's March 2019 Final Order by "(i) conducting an initial investigation using inadequate procedures;

8

(ii) removing Ms. Thayer's children from her home and custody without using any procedure that complies with due process, prior to any investigation; and (iii) forcing Ms. Thayer to enter into an unenforceable 'voluntary relinquishment.'" (Doc. 25 ¶ 184; *see also id.* ¶ 201.) Ms. Thayer asserts that these claims do not challenge any state-court judgment, but instead attack "the underlying conduct, practices, and policies, that governed those judgments." (Doc. 138-1 at 12.) The court disagrees; none of these claims are "independent" within the meaning of *Exxon Mobil*.

The court previously recognized that the allegedly flawed investigation was not conducted pursuant to any court order. (Doc. 137 at 31 n.12.) The court continues to hold that the initial investigation itself did not injure Ms. Thayer and that "[s]he is complaining of injuries caused by court orders that relied on that allegedly flawed investigation." (*Id.*) Regarding the challenge to DCF officials' removal of the children from Ms. Thayer's home, the record indicates that the temporary removal of the children on October 29, 2015 was carried out pursuant to court orders. (*See* Docs. 53-2, 53-3 (emergency care orders).) Ms. Thayer "cannot escape *Rooker-Feldman* simply by alleging in federal court that [s]he was injured by the state employees who took [her] child rather than by the judgment authorizing them to take the child." *Hoblock*, 422 F.3d at 88. Similarly, Ms. Thayer cannot avoid *Rooker-Feldman*'s application to her challenge to the voluntary relinquishment by attacking the alleged "underlying conduct" of DCF officials; that challenge would require review and rejection of the Family Division's finding that Ms. Thayer relinquished her rights voluntarily and without duress or coercion. (Doc. 53-35 ¶ 10.)

In Count III Ms. Thayer asserts a Fourteenth Amendment violation based on her allegations that DCF officials required her to participate in improper "treatment" for behavioral

issues that did not actually exist. (*See* Doc. 25 ¶ 226.) She contends that this claim is "independent of any state court order, and pre-dates the Family Court judgment." (Doc. 138-1 at 12.) It is true that the services at issue pre-dated the Family Division's March 2019 Final Order. But as the court previously stated, "[t]he behavioral and mental health services that Ms. Thayer challenges were part of case plans that the Family Division ordered under 33 V.S.A. § 5318(b)." (Doc. 137 at 34.) The record evidence shows multiple court orders that required Ms. Thayer to attend therapy and receive other services. (*See* Docs. 53-7, 53-12, 53-24.) Ms. Thayer has identified no allegations or evidence in support of her contention that the services at issue were "independent" of any court order.

Ms. Thayer's Motion for Reconsideration does not appear to seek reconsideration as to her ADA and Rehabilitation Act claims (Counts IV and V of the First Amended Complaint). (*See* Doc. 138-1 at 11–12; Doc. 138-2.) But in her reply memorandum she argues that her ADA and Rehabilitation Act claims should survive. (Doc. 153 at 11.) That argument is untimely. *See Chepilko v. Cigna Life Ins. Co. of N.Y.*, 952 F. Supp. 2d 629, 633 (S.D.N.Y. 2013) (argument "made for the first time in reply papers on a motion for reconsideration" was "plainly untimely"). It also lacks merit for the following reasons.

First, the court rejects Ms. Thayer's argument that the court failed to explain how *Rooker-Feldman* applies to the ADA and Rehabilitation Act claims. Those counts rest on the same alleged injury as Ms. Thayer's other causes of action. *See supra* (describing alleged injuries in Counts I–V). *Rooker-Feldman* applies to Ms. Thayer's claims in Counts IV and V because in those counts she complains of injuries caused by the Family Division's judgment.

Second, the court rejects Ms. Thayer's argument that *Rooker-Feldman* cannot apply to the ADA and Rehabilitation Act claims because, in her view, "there was no room to entertain

these claims in the underlying Family Court proceeding." (Doc. 153 at 12.)  For that proposition she relies on *In re B.S.*, 166 Vt. 345, 693 A.2d 716 (1997).  In that case, the Vermont Supreme Court held that a defendant in a TPR proceeding cannot raise ADA violations as a defense. *Id.* at 354, 693 A.2d at 722.  But the Court was careful not to "suggest that parents lack any remedy for . . . alleged violations of the ADA." *Id.*  And—critically—even though Ms. Thayer could not raise alleged ADA violations as a defense in the TPR proceedings, that does not prevent operation of *Rooker-Feldman* to bar an ADA or Rehabilitation Act claim.  *See Hoblock*, 422 F.3d at 87 ("[A] federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court.").

Ms. Thayer further asserts that two other claims that she sought to raise in her proposed Second Amended Complaint (Doc. 43-2) should survive: a claim for intentional infliction of emotional distress (IIED) (Count IX) and a claim for civil conspiracy (Count XI).  The court previously concluded that *Rooker-Feldman* bars those claims.  (Doc. 137 at 43.)  Ms. Thayer's arguments for reconsideration as to those claims are also unconvincing.

In the IIED claim, Ms. Thayer alleges that DCF officials "took affirmative acts to prevent Plaintiffs from having contact with their family members and to deprive Plaintiffs of their Constitutional rights to freely associate with and participate in the upbringing of their kin." (Doc. 43-2 ¶ 363.)  She further alleges that the officials "know or should have known that the return of the children to their real family's custody was in the children's best interests." (*Id.* ¶ 364.)  Insofar as the IIED claim is a repackaged version of the constitutional claims discussed above, *Rooker-Feldman* bars it for the same reason that it bars the constitutional claims.  Insofar as the claim alleges that DCF officials failed to return the children to Ms. Thayer's custody, *Rooker-Feldman* applies because the Family Division's orders controlled the issue of custody.

In the civil conspiracy claim, Ms. Thayer alleges that DCF officials and the Donnelly Defendants "acted individually and in concert, tacitly or directly, to deprive Plaintiffs of their civil rights, including their rights to substantive and procedural due process." (Doc. 43-2 ¶ 376.) But Ms. Thayer offers no basis to conclude that her conspiracy claim is anything other than derivative of the claims discussed above that *Rooker-Feldman* bars. *Cf. Qureshi v. People's United Bank*, No. 2:18-cv-00163, 2020 WL 2079922, at *19 (D. Vt. Apr. 30, 2020) (civil conspiracy claims were derivative because they alleged no distinct injuries or individualized duties). The conspiracy claim must be dismissed because *Rooker-Feldman* bars the underlying claims.

The decision in *Pennicott v. JPMorgan Chase Bank, N.A.*, No. 16 CV 3044 (VB), 2018 WL 1891312 (S.D.N.Y. Apr. 18, 2018), does not require a different conclusion. The court in that case held that *Rooker-Feldman* did not bar a damages claim for civil conspiracy because that claim did "not require a ruling that the foreclosure was improper." *Id.* at *4. *Pennicott* is distinguishable. To the extent the *Pennicott* court found *Rooker-Feldman* inapplicable to the conspiracy claim because that claim sought only damages as a remedy, the court respectfully declines to follow that reasoning. *See Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548 (KMK), 2007 WL 2176059, at *5 (S.D.N.Y. July 26, 2007) ("Plaintiff does not avoid *Rooker-Feldman* by seeking damages instead of injunctive relief."). Moreover, even if *Rooker-Feldman* does not itself bar the conspiracy claim, the claim is barred because it is derivative and *Rooker-Feldman* bars all of the underlying claims.

### 2.      Whether Claims Assert Injuries Caused by Family Court Judgment

Ms. Thayer argues that the court overlooked two principles that apply to the evaluation of whether her claims complain of injury *caused* by a state judgment. First, she asserts that the

12

Family Division's orders did not cause her injuries, and instead the state court merely ratified or acquiesced in the DCF Defendants' conduct. (Doc. 138-1 at 14.)  Second, she suggests that the court may have conflated the form of relief that she seeks with the injuries that she alleges. (*Id.* at 17.)  The DCF Defendants maintain that state court orders caused the injuries that Ms. Thayer claims. (Doc. 150 at 5.)  The court begins with Ms. Thayer's first argument.

Ms. Thayer argues that the court improperly applied a "less demanding" form of causality than *Rooker-Feldman*'s causation element. (Doc. 138-1 at 14.)  It is true that the introductory paragraph of the court's December 14, 2021 Opinion and Order describes Ms. Thayer's claims as "*aris[ing] from* her assertion that she 'has had her children taken from her unlawfully . . . .'" (Doc. 137 at 1 (emphasis added) (quoting Doc. 25 ¶ 1).)  And it is also true that courts have distinguished the phrases "arise from" and "caused by." *See, e.g.*, *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 52 (S.D.N.Y. 2015) ("[W]hether an injury was legally caused by a party's actions is a much more demanding question than whether the injury arose out of those actions.").

But the court's statement in the introductory paragraph of the 73-page Opinion and Order was not a recitation of the applicable legal standard.  Rather, the court was offering a general introduction to Ms. Thayer and her claims in this lawsuit.  All of the legal analysis of the *Rooker-Feldman* doctrine recites and applies the "caused by" standard. (*See* Doc. 137 at 21, 28, 31, 32, 35, 43.)  The court rejects Ms. Thayer's contention that the Opinion and Order applied the wrong standard.

The court also rejects Ms. Thayer's argument that her injuries were caused by the Nonjudicial Defendants' misconduct rather than the Family Division's judgments. (Doc. 138-1 at 15.)  Ms. Thayer does indeed allege that the DCF Defendants engaged in misconduct.  And a

13

plaintiff may "seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment." *Limtung v. Thomas*, No. 19-CV-3646 (RPK) (MMH), 2021 WL 4443710, at *5 (E.D.N.Y. Sept. 28, 2021) (quoting *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021)).

But as the Second Circuit has recognized, "in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock*, 422 F.3d at 88. "The challenge is to identify such suits." *Id.* The Second Circuit has articulated the following formula to guide that inquiry: "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* Nothing in *Limtung* or *Dorce* alters this test.

Ms. Thayer asserts that her claims are "based on conduct that was simply ratified by state court decisions, not 'caused by' them." (Doc. 138-1 at 16.) As the court previously recognized, certain of the acts that Ms. Thayer alleges occurred before the Family Division's March 2019 Final Order and could not have been caused by that order. (Doc. 137 at 31.) Ms. Thayer suggests that some of this earlier conduct "may have been ratified at times." (Doc. 138-1 at 16.) But she cites no allegations or evidence for this speculation. Moreover, the court has already discussed how specific events before the Family Division's March 2019 decision were still caused by that court's earlier orders. (*See* Doc. 137 at 31, 33–34.)

The one event that Ms. Thayer cites in her reconsideration motion for her claim that the Family Division "ratified" the wrongful conduct of a third party is the "voluntary relinquishment" of her parental rights in November 2018. (Doc. 138-1 at 16.) She contends that the Family Division's acceptance of her relinquishment of parental rights was like the coercive

settlement agreements in *Sung Cho v. City of New York*, 910 F.3d 639 (2d Cir. 2018).  In that

case, each of the plaintiffs alleged that city officials used a so-called "no-fault eviction" process

to compel them to enter into settlement agreements that waived their constitutional rights.  After

the plaintiffs signed the settlement agreements at issue, each agreement was "so ordered" by

state courts.  The district court dismissed the plaintiffs' claims on *Rooker-Feldman* grounds.  The

Second Circuit vacated the judgment and remanded, reasoning that the plaintiffs were

"attempting to remedy an alleged injury caused when, prior to any judicial action, they were

coerced to settle." *Id.* at \*649.  The court concluded that the case did "not entail the evil *Rooker-*

*Feldman* was designed to prevent." *Id.*

      This case differs significantly from *Sung Cho*.  The injuries that Ms. Thayer alleges she

sustained—most particularly the termination of her parental rights—occurred after years of

judicial action related to the care and custody of her children.  And the state court did not simply

"so order" a private settlement.  Instead, the Family Division received testimonial and

documentary evidence from Ms. Thayer and from foster parents, and considered the arguments

from Ms. Thayer's counsel and from representatives for the State, the foster parents, and the

children. (*See* Doc. 53-34.)  The Family Division was also actively involved in a colloquy about

the voluntariness of the relinquishment and in making factual findings on that point. (*See id.*

at 12–15.)  As the court previously noted, Ms. Thayer's complaint is, at the most general level,

the "destruction of her family." (Doc. 25 ¶ 1.)  That is a complaint of an injury caused by the

Family Division's March 2019 Final Order. (Doc. 53-35.)

      Reviewing *Sung Cho* and other cases distinguishing *Sung Cho*, one court has recently

observed that the "principle that emerges from all of the caselaw is that the Court 'must

scrutinize the injury of which [the] plaintiff[s] complain as a necessary step toward determining

whether the suit impermissibly seeks review and rejection of a state court judgment, or permissibly seeks some other remedy.'" *Lorick v. Kilpatrick Townsend & Stockton LLP*, No. 18-CV-7178 (ENV), 2021 WL 7906510, at \*9 (E.D.N.Y. Aug. 20, 2021) (alterations in original) (quoting *Charles v. Levitt*, 716 F. App'x 18, 21 (2d Cir. 2017) (summary order)). Quoting *Charles v. Levitt*, the December 14, 2021 Opinion and Order recited and applied that same principle. (Doc. 137 at 31–32.) Although the Opinion and Order did not cite *Sung Cho* or explicitly discuss possible "ratification" of third-party actions, the court applied the correct standard on this issue.

Ms. Thayer notes that the Opinion and Order did not quote the statement in *Charles v. Levitt* indicating that *Rooker-Feldman* is inapplicable where the plaintiff's suit "permissibly seeks some other remedy"—i.e., some remedy other than review and rejection of a state-court judgment. *Charles*, 716 F. App'x at 21. She argues that her request for damages is such an "other remedy." (Doc. 138-1 at 17.) And she insists that she "has very specifically not asked this Court to 'overturn' any state court judgments and has pleaded carefully past *Rooker-Feldman*." (*Id.* at 13.)

The court is unpersuaded. Ms. Thayer cannot avoid *Rooker-Feldman* by "clever pleading." *Hoblock*, 422 F.3d at 88. The court's Opinion and Order recognized that Ms. Thayer seeks damages. (Doc. 137 at 29.) And the court reasoned that, consistent with *Canning v. Administration for Children's Services*, 588 F. App'x 48 (2d Cir. 2014) (summary order), *Rooker-Feldman* still applied. (Doc. 137 at 30.) Since Ms. Thayer is not seeking reconsideration of the dismissal of her claim for declaratory or injunctive relief, this case is arguably now somewhat different than *Canning*, where the plaintiffs sought both damages and injunctive relief. Nevertheless, Ms. Thayer cannot "avoid *Rooker-Feldman* by seeking damages

instead of injunctive relief." *Lomnicki*, 2007 WL 2176059, at *5. Here, as in *Lomnicki*, the court would have to review the Family Division's decision to award damages to Ms. Thayer.

Ms. Thayer notes that the *Lomnicki* court found that *Rooker-Feldman* did not bar the plaintiff's third cause of action. In that case, the plaintiff complained of the treatment that her children received "once they were in Defendants' care, treatment that was not directed by the Family Court's orders." *Id.* She alleged that the children "were abused by their step-families and otherwise did not receive proper foster care." *Id.* The court reasoned that the injury complained of in the third cause of action "allegedly occurred after the Family Court judgment, but it was not 'caused by' that state-court judgment." *Id.* Ms. Thayer asserts that her claim for violation of her right to refuse medical treatment is similar. (Doc. 138-1 at 13.) The court disagrees because, as stated in the Opinion and Order, the behavioral and mental health services that she challenges were part of case plans that the Family Division ordered under 33 V.S.A. § 5318(b). (Doc. 137 at 34.)

Ms. Thayer also cites the decision in *Guest v. Allegheny County*, No. 20-130, 2020 WL 4041550 (W.D. Pa. July 17, 2020). The court in that case concluded that *Rooker-Feldman* did not bar the plaintiff's § 1983 claims because the plaintiff-parents did not seek injunctive relief overturning the judgments of the state court but instead sought "damages which are alleged to arise from Defendants' actions, particularly the representations by Ms. Horton to the court which resulted in the issuance of the ECA [emergency custody authorization] and the removal of the children." *Id.* at *5. The court agrees with the court in *Guest* that "[t]he form of relief is relevant." *Id.* But the form of relief is not dispositive. *See Lomnicki*, 2007 WL 2176059, at *5 ("Plaintiff does not avoid Rooker-Feldman by seeking damages instead of injunctive relief. In

order to award damages to Plaintiff, the Court would have to review the decision of the Family Court."). The court respectfully declines to follow *Guest* to the extent it holds to the contrary.

### 3. The "Fraud Exception"

Finally, Ms. Thayer argues that the court overlooked precedent indicating the applicability of the "fraud exception" to *Rooker-Feldman*. (Doc. 138-1 at 17.) The court's December 14, 2021 Opinion and Order discussed Ms. Thayer's fraud argument at length, distinguished cases that Ms. Thayer cited, and ultimately concluded that *Rooker-Feldman* still applied despite Ms. Thayer's contention that the judgment in the Family Division was obtained by fraud. (Doc. 137 at 37–41.)

The additional cases that Ms. Thayer cites in her reconsideration motion are unpersuasive. Two of the cases that she cites—*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010), and *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006)—are mentioned in the Second Circuit's decision in *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 428 n.2 (2d Cir. 2014). As the *Vossbrinck* court observed, the courts in *Great Western* and *Loubser* found that "the *Rooker-Feldman* doctrine did not bar allegations that a state judicial process was corrupted by conspiracy in violation of due process." *Vossbrinck*, 773 F.3d at 428 n.2. At the same time, the *Vossbrinck* court held that *Rooker-Feldman* barred a claim asking a federal court to grant title to the plaintiff's property on the basis that a foreclosure judgment was obtained fraudulently. *Id.* at 427. The court reasoned that "[t]his would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Id.*

Ms. Thayer's case has now evolved to be somewhat different than *Vossbrinck* because she is not seeking reconsideration of the dismissal of her claim for declaratory or injunctive

relief.  But as noted above, Ms. Thayer cannot "avoid *Rooker-Feldman* by seeking damages instead of injunctive relief." *Lomnicki*, 2007 WL 2176059, at *5.  Here, as in *Lomnicki*, the court would have to review the Family Division's decision to award the damages that Ms. Thayer seeks.  Although Ms. Thayer alleges that the state-court judgment was procured through fraud, it is impossible to read Ms. Thayer's claims as "independent from the claim that the state court judgment was erroneous." *In re Ward*, 423 B.R. 22, 29 (Bankr. E.D.N.Y. 2010).

The decisions in *Great Western* and *Loubser* are distinguishable.  The court in *Great Western* found that:

> Great Western, by alleging a conspiracy between Defendants and the Pennsylvania judiciary to rule in favor of Rutter and ADR Options, is attacking the state-court judgments.  But, like Nesses, Great Western is not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution.  Instead, Great Western claims that "people involved in the decision violated some independent right," that is, the right to an impartial forum.

*Great Western*, 615 F.3d at 172 (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)).  Similarly, the *Loubser* court held that "[t]he claim that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not bared by the *Rooker-Feldman* doctrine." *Loubser*, 440 F.3d at 441 (quoting *Nesses*, 68 F.3d at 1005).

Here, in contrast, Ms. Thayer does not plausibly allege that the Family Division joined any conspiracy to violate her rights.  That was the court's conclusion as it analyzed the claims against the Judicial Defendants in the December 14, 2021 Opinion and Order.  (*See* Doc. 137 at 19 ("[T]he allegations are insufficient to support Plaintiff's conjecture that the Vermont judiciary has entered into a 'tacit deal' to violate parents' civil rights . . . ." (citation omitted)).)  And Ms. Thayer does not seek reconsideration of the dismissal of the claim against the Judicial Defendants.  (Doc. 153 at 13.)

19

Ms. Thayer's case remains more like *Vossbrinck*. She claims that the Family Division issued orders based on misrepresentations to the Family Division. That is insufficient to avoid *Rooker-Feldman*. *See Vossbrinck*, 773 F.3d at 427 (*Rooker-Feldman* applied where plaintiff was "asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose").

## B.    Amendment

Ms. Thayer's Motion for Reconsideration also requests "an opportunity to amend her Complaint to cure any deficiencies." (Doc. 138-1 at 7; *see also id.* at 19 (conclusion requesting "leave to file an amended Complaint").) Multiple defendants oppose that request. (Docs. 142, 143, 144.)[5] Ms. Thayer maintains that her "alternative request for leave to amend her claims" is appropriate. (Doc. 153 at 13–14.) She explains:

> Plaintiffs do not intend to join additional parties, but may amend claims based on discovery at a later date, which they are permitted to do by July 29, 2022, pursuant to the parties' Stipulated Discovery Schedule/Order entered on January 14, 2022. ECF No. 146. However, at this point in the case, as will be shown in a proposed amended Complaint (if permitted), Plaintiffs seek to cure the alleged defects and clarify that their claims do not seek review or reversal of the Family Court judgment.

(*Id.* at 14.)

Plaintiff's request for leave to amend is procedurally improper. Insofar as it is a motion to amend, it fails to comply with Local Rule 15 because Plaintiff has not included a redlined version of the proposed amendment or a non-redlined reproduction of the entire amended filing. Ms. Thayer correctly notes that the currently operative discovery schedule allows motions to

---

[5] The Judicial Defendants also filed an opposition to Ms. Thayer's request for amendment (Doc. 141 at 6), but Ms. Thayer has clarified that she does not seek to replead her claims against those defendants (Doc. 153 at 13). Defendants John W. Donnelly, Ph.D., PLLC and Lund Family Center, Inc. adopt defendant John W. Donnelly's arguments in opposition to amendment. (*See* Docs. 143, 144.)

amend the pleadings until July 29, 2022.  (Doc. 146 ¶ 14.)  But her vague request for leave to amend is not a procedurally proper motion to amend.  Instead, Plaintiff only seeks leave to amend "to cure the alleged defects and clarify that their claims do not seek review or reversal of the Family Court judgment."  (Doc. 153 at 14.)  The court concludes that this request only "further underscores the fact that [her] present arguments are not a proper basis for reconsideration."  *Rubenstein v. Knight-Swift Transp. Holdings Inc.*, No. 19 Civ. 7802 (KPF), 2021 WL 3855863, at *4 (S.D.N.Y. Aug. 27, 2021).

## III.   DCF Defendants' Partial Cross-Motion for Reconsideration (Doc. 163)

In its December 14, 2021 Opinion and Order, the court concluded that *Rooker-Feldman* bars "all of the First Amended Complaint's claims against the DCF Defendants."  (Doc. 137 at 41.)  Based on that conclusion, the court found it "unnecessary to consider the DCF Defendants' alternative arguments based on issue preclusion, the statute of limitations, and qualified immunity *insofar as those arguments relate to the First Amended Complaint.*"  (*Id.* (emphasis added) (citations omitted).)  The First Amended Complaint, however, did not include Martha Thayer and Elam Thayer ("Grandparents") as plaintiffs.  (*See* Doc. 25.)

Plaintiff's "Motion for Permissive Joinder" sought to add Ms. Thayer's parents as additional plaintiffs.  (Doc. 43.)  The DCF Defendants argued that joinder of Grandparents as additional plaintiffs would be futile on qualified immunity grounds.  (Doc. 53 at 34; Doc. 74 at 17.)  The court's December 14, 2021 Opinion and Order considered the qualified immunity issue and concluded that "a more complete factual record is necessary" to analyze the qualified immunity defense to Grandparents' due process claims and their proposed claims in Counts IV–V and IX–XI.  (Doc. 137 at 57.)  The Opinion and Order also observed that it was not entirely clear whether the DCF Defendants also argued that *Rooker-Feldman* barred Grandparents'

proposed claims and concluded that the briefing was inadequate to address the potential applicability of that doctrine to those claims. (*Id.* at 43 n.19.)

The Opinion and Order did not address whether Grandparents' claims might be time-barred or barred by issue preclusion and the voluntary relinquishment. The DCF Defendants now request that the court partially reconsider and clarify the Opinion and Order in two ways. First, they request that the court conclude that "significant portions of the Grandparent claims are time-barred." (Doc. 150 at 9.) Second, they request that the court "clarify the impact of its decision not to separately address their issue preclusion and voluntary relinquishment arguments on the scope of the remaining Grandparent claims." (*Id.*)

Ms. Thayer argues that: (1) the DCF Defendants have not met the reconsideration standard; (2) the statute of limitations does not bar Grandparents' claims; (3) issue preclusion does not bar Grandparents' claims; and (4) Grandparents' remaining claims are permissible. (Doc. 153 at 7–13.) The DCF Defendants maintain that the court "should leave for resolution on a more developed record only claims by the Grandparent Plaintiffs that they had rights as Grandparents to potentially care for their grandchildren that the DCF defendants abridged on or after July 3, 2017." (Doc. 156 at 3.)

## A.    The Reconsideration Standard

The court applies the reconsideration standard articulated above, analyzing whether there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Lareau*, 2019 WL 4963057, at *2. Ms. Thayer relies on *Pem-America, Inc. v. Sunham Home Fashions, LLC* for the proposition that courts "cannot reconsider issues that were never considered." No. 03 Civ. 1377(JFK)(RLE), 2008 WL 394787, at *2 (S.D.N.Y. Feb. 13, 2008). But the court addressing the discovery

22

dispute in that case did not rule on a request for "all" documents because the court understood

that only a specific subset of documents remained at issue. *See id.* Recognizing that its

understanding might have been incorrect, the court concluded that it could not "reconsider" any

such unresolved issues, but that the parties could submit letters "to address any outstanding

discovery issues." *Id.*

Similarly, courts have analyzed issues on motions to reconsider where the issues were

raised in the original motion but not addressed in the resulting order. *See, e.g.*, *Kashef v. BNP*

*Paribas SA*, No. 16-cv-03228 (AJN), 2021 WL 1614406, at *1 (S.D.N.Y. Apr. 26, 2021)

(agreeing that the court did not directly address an argument in its Opinion and Order but

concluding that court would have rejected the argument); *Vaughn v. Consumer Home Mortg.*

*Co.*, 470 F. Supp. 2d 248, 258 (E.D.N.Y. 2007) (reconsideration motion need not be denied

"simply because the cases or arguments that the court is alleged to have overlooked were before

it when it issued its initial ruling"); *In re Rome Fam. Corp.*, No. 02-11771, 2010 WL 1381093,

at *9 (Bankr. D. Vt. Mar. 31, 2010) (considering merits of arguments that defendant argued the

court failed to consider in its initial decision).

Here, in opposition to the "Motion for Permissive Joinder," the DCF Defendants argued

that issue preclusion and the voluntary relinquishment bar Plaintiffs' claims. (Doc. 56-41 at 8.)

They also argued that "all of Plaintiffs' claims arising out of the proceedings before August 1,

2016 are time barred." (*Id.* at 18.) Ms. Thayer opposed both of those arguments. (Doc. 70

at 23, 32.) She further argued that issue preclusion and the statute of limitations do not bar

Grandparents' claims. (*See id.* at 42 ("For the reasons set forth herein, Plaintiffs' claims survive

dismissal . . . .").) Although the parties and the court focused primarily on *Rooker-Feldman*, the

issue-preclusion and time-bar questions were properly raised. The court will consider these issues here.

### B.   Issue Preclusion—Effect on Grandparents' Claims

"The doctrine of collateral estoppel, also known as issue preclusion, prevents relitigation of an issue that has been raised and decided in an earlier proceeding." *Ernst v. Kauffman*, 50 F. Supp. 3d 553, 568 (D. Vt. 2014). "A federal court must 'refer to the preclusion law of the State in which judgment was rendered' to determine the preclusive effect of the judgment." *Id.* (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under Vermont law, issue preclusion applies to a given issue if:

> (1) [P]reclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Id.* (alteration in original) (quoting *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990)).

The court begins with the first element required for issue preclusion. In their opposition to the "Motion for Permissive Joinder," the DCF Defendants asserted that the first element was satisfied because Ms. Thayer was a party to the Family Court proceeding. (Doc. 56-41 at 9.) Ms. Thayer agreed that she was a party to the Family Court proceeding but argued that the other four elements were not met. (Doc. 70 at 23.) In their reconsideration motion, the DCF Defendants maintain that the first preclusion element is met as to Grandparents because Grandparents are in privity with Ms. Thayer. (Doc. 150 at 13.) Ms. Thayer argues that "Grandparents were not in privity with Ms. Thayer in the Family Court case." (Doc. 153 at 10.)

"A privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right." *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d

731, 735 (1996) (quoting *Dep't of Human Servs. v. Comeau*, 663 A.2d 46, 48 (Me. 1995)).

Courts evaluate whether the parties "have really and substantially [the] same interest in

successive proceedings." *Id.* (citing *First Wis. Mortg. Tr. v. Wyman's, Inc.*, 139 Vt. 350, 358–

59, 428 A.2d 1119, 1124 (1981)).

The court concludes that the interests at stake in the Family Court proceedings are

different from Grandparents' interests in this federal civil rights case.  In the Family Division,

Ms. Thayer litigated her rights as a parent, including her interest in custody of her three children.

Although Grandparents were not parties to the Family Division proceedings, they may have had

some rights in those proceedings as potential kinship caregivers.  Grandparents' rights were not

in conflict with Ms. Thayer's rights (*see* Doc. 137 at 52), but they are not the same rights.  The

court concludes that Grandparents were not in privity with Ms. Thayer in the Family Division

proceedings.  Issue preclusion therefore cannot apply to bar Grandparents' claims in this case.

## C.    Statute of Limitations—Effect on Grandparents' Claims

Although the DCF Defendants originally argued that the statute of limitations barred all

of Plaintiffs' claims arising out of proceedings before August 1, 2016 (Doc. 56-41 at 18), they

now argue that the statute of limitations bars all of Grandparents' claims based on conduct before

June 3, 2017 (*see* Doc. 150 at 11).  They contend that the applicable limitations period is

three years and that the only timely Grandparent claims are those that are based on conduct that

occurred within three years prior to June 3, 2020—the date Grandparents first sought to assert

claims in this case.[6]  (*See* Doc. 150 at 11.)  Thus, according to the DCF Defendants, the statute of

---

[6] The DCF Defendants' reconsideration motion refers to "July 3, 2020" (Doc. 150 at 11) but this appears to be a typographical error because the Motion for Leave to File a Second Amended Complaint (and thereby add Grandparents as plaintiffs) was filed on *June* 3, 2020. (Doc. 43.)  The DCF Defendants' reply refers to the June 3 date.  (Doc. 156 at 9.)

limitations bars all of Grandparents' claims arising out of the initial CHINS proceeding, which concluded on October 13, 2016.  (Doc. 150 at 11.)

Grandparents maintain that the date their claims accrued is a question of fact that cannot be determined in the present procedural context.  (*See* Doc. 153 at 9.)  Alternatively, they suggest that their claims accrued on November 30, 2018—the date that the Family Division accepted Ms. Thayer's relinquishment of parental rights—and that their claims are timely.  (*Id.*)  The DCF Defendants reply that Grandparents' accrual argument "ignores the fact that this case arises out of two separate proceedings"—namely, the CHINS proceeding and the TPR proceeding. (Doc. 156 at 6.)

The parties agree that—at least for Grandparents' § 1983 claims—the length of the applicable statute of limitations is three years.  The court concurs on that point.  *See Demarest v. Town of Underhill*, No. 2:21-cv-167, 2022 WL 911146, at *6 (D. Vt. Mar. 29, 2022) ("Section 1983 actions that are filed in Vermont are subject to Vermont's three-year statute of limitations for personal injury actions.").[7]  But the parties disagree on when the three-year clock started ticking—i.e., the accrual date.  The accrual date for a § 1983 action is a "question of federal law that is *not* resolved by reference to state law."  *Demarest*, 2022 WL 911146, at *6 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

---

[7] Grandparents have brought other claims in addition to their § 1983 claims.  The court has previously dismissed their loss-of-consortium claim.  (Doc. 137 at 65.)  That leaves their claims under the ADA and Rehabilitation Act, plus their claims for IIED and civil conspiracy.  A three-year period is likely to apply for those claims as well.  *See Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 63 (2d Cir. 2021) (Rehabilitation Act); *Purcell v. N.Y. Inst. of Tech. – Coll. of Osteopathic Med.*, 931 F.3d 59, 62–63 (2d Cir. 2019) (ADA); *Costello v. Gannett Satellite Info. Network Inc.*, 939 F. Supp. 313, 315 (D. Vt. 1996) (IIED); *State v. Atl. Richfield Co.*, No. 340-6-14 Wncv, 2018 WL 11358617, at *11 (Vt. Super. Ct. July 31, 2018) (applying same limitations period for civil conspiracy as for underlying torts).

Under federal law, accrual generally occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Wallace*, 549 U.S. at 388). However, the Second Circuit has recognized that the "discovery rule" applies to § 1983 claims. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995). Under that rule, the accrual date is determined by "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).

Determination of the plaintiff's knowledge or reason to know of the injury and its cause can require resolving factual questions. *See Thompson v. Metro. Life Ins. Co.*, 149 F. Supp. 2d 38, 49–50 (S.D.N.Y. 2001) (court ruling on summary judgment could not "conclusively find that plaintiffs, exercising reasonable diligence, did or should have had notice of their injury"). But such a determination can also be made on a motion to dismiss, depending on the circumstances. *See Singleton*, 632 F.2d at 191 (affirming grant of motion to dismiss and determining accrual date under discovery rule). Grandparents offer no analysis as to why this case might be like *Thompson*, and—to the contrary—they assert that an accrual date *is* ascertainable and that the date is November 30, 2018. (Doc. 153 at 9.)

Here, Grandparents allege that Defendants "improperly and wrongfully deprived Grandparents of their right to adopt their granddaughter." (Doc. 43-2 at 4.) They claim that they were "not made aware of their injury until their daughter, Ms. Thayer, was coerced into 'voluntarily' giving up her parental rights." (Doc. 153 at 9.) The Family Division accepted the voluntary relinquishment on November 30, 2018. (Doc. 53-34.)

Notably, Grandparents' proposed November 30, 2018 accrual date is *after* the June 3, 2017 accrual date that the DCF Defendants propose. Both dates are before the Family Division's

March 1, 2019 Final Order. (Doc. 53-35.) Thus there appears to be no dispute that Grandparents' claims arising out of the TPR proceedings are timely. (*See* Doc. 156 at 9.) Since neither proposed accrual date is before the October 13, 2016 CHINS judgment (Doc. 53-24), the court agrees with the DCF Defendants that the statute of limitations bars any Grandparent claims arising out of the initial removal, nonreturn, and temporary placements of their grandchildren during the CHINS proceeding.

The court rejects the DCF Defendants' argument that the statute of limitations bars any claim by Grandparents "that DCF improperly did not pursue an ICPC [Interstate Compact on Placement of Children] placement of Sheera." (Doc. 156 at 9.) The alleged ICPC failures overlap with the CHINS proceeding to some extent since Grandparents allegedly filled out ICPC paperwork in March 2016—before the October 2016 CHINS judgment. (Doc. 43-2 at 28.) But some of the alleged conduct regarding the ICPC issue occurred after June 2017—the date that the DCF Defendants advocate as the accrual date—and potentially impacted Grandparents' ability to adopt Sheera. Although Grandparents claim they were not aware of their alleged injuries until November 2018, that is not necessarily inconsistent with their allegation that Defendant Brown failed to act on the ICPC and told Ms. Thayer that it was "too late" for the ICPC. (Doc. 43-2 at 32.) The court cannot presume at this point that Ms. Thayer shared that communication with her parents. The court will consider the ICPC claims as arising out of the TPR proceedings and therefore timely.

## D.     Remaining Grandparent Claims

As noted above, Grandparents have brought various claims in addition to their § 1983 claims. The court has previously dismissed their loss-of-consortium claim. (Doc. 137 at 65.)

That leaves their claims under the ADA and Rehabilitation Act (Counts IV and V of the First Amended Complaint), plus their claims for IIED and civil conspiracy (Counts IX and XI).

Regarding Counts IV and V, the DCF Defendants argue that Grandparents cannot "assert claims on behalf of Ms. Thayer that she is barred from relitigating." (Doc. 150 at 12.) This appears to be an argument about standing or the identity of the "real party in interest" for purposes of Counts IV and V. *See Kindred Nursing Ctrs. E., LLC v. Estate of Nyce*, No. 5:16-cv-73, 2017 WL 2377876, at *2 (D. Vt. May 31, 2017) ("The real party in interest principle ensures that only a person who possesses the right to enforce a claim and who has a significant interest in the litigation can bring the claim." (cleaned up)). This issue was not raised in the DCF Defendants' Motion to Dismiss and the court declines to address it on reconsideration. *See Ranta v. City of New York*, No. 14-CV-3794 (FB) (LB), 2019 WL 2568725, at *1 (E.D.N.Y. June 20, 2019) ("Parties may not use a motion for reconsideration to 'advance new facts, issues, or arguments not previously presented to the Court.'" (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001))).

Similarly, regarding Counts IX and XI, the DCF Defendants argue that Grandparents lack standing "to assert Ms. Thayer's barred claims that her parental rights were violated and improperly terminated." (Doc. 150 at 13.) That might be true, but the court declines to address this new issue on reconsideration. Notably, the DCF Defendants concede that "Counts IX and XI can be read as asserting both claims that belong to the Grandparent Plaintiffs and claims that do not." (*Id.* at 12.) The DCF Defendants do not appear to seek dismissal of Counts IX and XI insofar as they assert claims that belong to Grandparents. If Grandparents attempt to prosecute Counts IX and XI as claims that do not belong to them, the court will consider the DCF Defendants' standing argument at that time.

## Conclusion

Plaintiff's Motion for Reconsideration and Request for Leave to Amend (Doc. 138) is DENIED.

The DCF Defendants' Cross-Motion for Reconsideration (Doc. 163) is GRANTED IN PART and DENIED IN PART.  Issue preclusion does not bar Grandparents' claims.  The statute of limitations bars any Grandparent claims arising out of the initial removal, nonreturn, and temporary placements of their grandchildren during the CHINS proceeding.  Grandparents' claims arising out of the TPR proceedings are timely.

Dated at Burlington, in the District of Vermont, this 24ᵗʰ day of May, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court